IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI
AT JOPLIN

| | |
|---|---|
| MIKE DOMINICK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )    Case No. |
| | ) |
| THE MIDWEST INDEMNITY | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

### PLAINTIFF'S PETITION FOR DAMAGES

**COMES NOW** Plaintiff, Mike Dominick, by and through his undersigned counsel, Johnson, Vorhees & Martucci, and for his causes of action against Defendant The Midwest Indemnity Company (hereinafter "Midwest Indemnity"), states and avers as follows:

### GENERAL ALLEGATIONS

1.    At all times relevant to this action, Plaintiff Mike Dominick, was a resident of Jasper County, Missouri.

2.    At all times relevant to this action, Midwest Indemnity was and is a foreign corporation, doing insurance business in the State of Missouri. Defendant Midwest Indemnity conducts a systematic and routine business in the State of Missouri, including Jasper County, and is subject to the long arm statutes of Missouri. Defendant can be served with the Summons and Petition by serving the **Missouri Division of Insurance, at 301 West High Street, Jefferson City, Cole County, Missouri 65102.**

3.    Venue is proper in Jasper County pursuant to RSMo. § 508.010, in that Plaintiff was first harmed in Jasper County, Missouri, by the wrongful conduct of Defendant.



DEFENDANT'S
EXHIBIT
C

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

4.     This suit arises from Defendant's wrongful acts in handling of Mr. Dominick's claim under his Missouri Homeowners' Insurance Policy (the "Policy") for damages caused by the Joplin Tornado. The Policy was sold by Midwest Indemnity to Mr. Dominick. The policy at issue bears policy number PLP W228067, and provides coverage for the residence at 5390 East 23rd Street, Joplin, Missouri.

5.     On May 22, 2011, an EF5 multiple-vortex tornado touched down in Joplin, Missouri.

6.     Mr. Dominick's home was substantially damaged by the tornado, resulting in irreparable damage to the home's roof and outside pond and storage shed roof, and damage to the interior, bricks, gates, trees (including damages for tree removal), chimney caps, and contents, and consequential damages arising from the damage.

7.     After the tornado Mr. Dominick timey filed an insurance claim under his Policy with his insurance company, Midwest Indemnity, for damages to his home and premises caused by the tornado. Mr. Dominick has asked that Midwest Indemnity cover the full cost of repairs to his property arising out of the tornado pursuant to the Policy.

8.     Midwest Indemnity performed an inadequate, incomplete and unreasonable investigation of Mr. Dominick's claim before denying full payment for all the damage to his property. Midwest Indemnity has wrongfully denied Mr. Dominick's property claim by not providing full coverage under the Policy for all his damages.

9.     As a result, Mr. Dominick was required to retain an attorney to prosecute his claim for insurance benefits.

10.    Defendant has denied and delayed payment for Mr. Dominick's necessary and

covered home and premises repairs under his insurance policy. Given the repeated denials and delays of payment, Mr. Dominick has been subjected to significant economic impact, worry, distress, and continuing economic damage. In addition, Mr. Dominick has suffered financial harm and damage as a result of Defendant's denials and repeated delays.

## COUNT I - Breach of Contract

11.   Plaintiff incorporates by reference the allegations of paragraphs 1 through 10, above, as though set forth fully herein.

12.   Defendant agreed to provide Plaintiff with insurance on his home and property in exchange for payment of money.

13.   Plaintiff fulfilled all of his obligations under the Policy, including the payment of certain premiums to secure insurance, and tendered performance pursuant to the contract.

14.   Defendant's refusal to pay claimed benefits for all damages to Mr. Dominick's property due to the tornado in accordance with the Policy constitutes a breach of contract.

15.   Plaintiff has suffered damages caused by Defendant's breach of contract; particularly damage to the home's roof (and water leakage caused by the same) and outside pond and storage shed roof, and damage to the interior, bricks, gates, trees (including damages for tree removal), chimney caps, and contents.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Midwest Indemnity for damages that are fair and reasonable, for his costs incurred herein, for all other damages, and such further relief as the court deems fair and reasonable, in an amount not to exceed $75,000.00, which is minimum jurisdictional limit for federal court.

## COUNT II – VEXATIOUS REFUSAL
### RSMo. §§ 375.296, 375.420

16.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 15, above, as though set forth fully herein.

17.     Midwest Indemnity has a contractual duty to provide insurance coverage in circumstances such as this where there is a covered loss under the Policy.

18.     Defendant Midwest Indemnity has breached its contract of insurance in that is has not paid the full amount of Plaintiff's loss under the Policy.

19.     Defendant Midwest Indemnity failed to adopt and implement reasonable standards for a prompt and adequate investigation of claims arising under its policies.

20.     Defendant Midwest Indemnity failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim.

21.     Defendant Midwest Indemnity refused to pay the full value of Plaintiff's claim without conducting a reasonable and adequate investigation with respect to the claim.

22.     Defendant Midwest Indemnity knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices.

23.     Midwest Indemnity failed to timely commence investigation of the claim or to request from Mr. Dominick any additional items, statements or forms that Midwest Indemnity reasonably believe to be required from Mr. Dominick.

24.     Midwest Indemnity failed to notify Mr. Dominick in writing of the acceptance or rejection of the claim not later than the 30th business day after receipt of all items, statements and forms required by Midwest Indemnity.

25.     Midwest Indemnity delayed payment of Mr. Dominick's claim after due demand without substantial justification or a legitimate reason.

26.     Midwest Indemnity has refused to pay for a period of thirty days after due demand prior to the institution of this action to make payment under the terms and provisions of the contract of insurance.

27.     Midwest Indemnity failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim without a reasonable cause or excuse and Midwest Indemnity's refusal to pay the claimed loss is without reasonable cause or excuse. Defendant Midwest Indemnity's failure and refusal are, therefore, vexatious within the meaning of RSMo. § 375.296 and § 375.420.

WHEREFORE, Plaintiff prays for judgment against Defendant Midwest Indemnity for the contracted coverages, plus statutory penalties under RSMo. §§ 375.296, 375.420 consisting of twenty percent of the first fifteen hundred dollars in benefits and ten percent of the excess over fifteen hundred dollars, for prejudgment interest as allowed by law, costs incurred herein, plus attorneys' fees as provided by law and RSMo. § 375.420, and such other damages as the Court deems fair and reasonable, in an amount not to exceed $75,000.00.

## COUNT III – Fraud

28.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 27, above, as though set forth fully herein.

29.     Midwest Indemnity misrepresented the insurance Policy that affords property coverage to Mr. Dominick, by making an untrue statement of material fact, to wit: Midwest Indemnity made a representation to Plaintiff that Midwest Indemnity would provide insurance coverage in accordance with the Policy issued for Plaintiff's property located at 5390 East 23rd Street, Joplin, Missouri, but have not provided insurance coverage in accordance with the Policy.

30.     Midwest Indemnity misrepresented the insurance Policy that affords property coverage to Mr. Dominick, by failing to state a material fact that is necessary to make other statements made not misleading.

31.     Midwest Indemnity misrepresented the insurance policy that affords property coverage to Mr. Dominick, by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed.

32.     The representations made by Defendant were material, false, were either known to be false or was recklessly made without knowledge of its truth or falsity, and were made with the intent it should be acted on by Plaintiff in a manner reasonably contemplated.

33.     Midwest Indemnity acted fraudulently as to each representation made to Mr. Dominick concerned material facts and which Midwest Indemnity knew were false or made recklessly without any knowledge of their truth.

34.     Plaintiff was ignorant of the truth or falsity of the representations; Plaintiff had a right to rely thereon and did, in fact, rely thereon, as more fully set out above and was thereby damaged as a direct and proximate result thereof as more fully set out below.

35.     The representations were made with the intention that they be acted upon by Mr. Dominick, who relied on those representations, thereby causing injury and damage to Mr. Dominick.

36.     As a direct and proximate result of Defendant's false representations, Plaintiff sustained damages.

37.     The false representations were outrageous, made maliciously, and/or showed a reckless indifference to the rights of Plaintiff, so as to justify the imposition of punitive damages.

**WHEREFORE**, Plaintiff prays for judgment against Defendant Midwest Indemnity for damages that are fair and reasonable, for punitive damages, for his costs incurred herein, and for all other damages and appropriate relief as the court deems fair and reasonable, in an amount not to exceed $75,000.00.

<strong><u>COUNT IV - Punitive Damages</u></strong>

38.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 37, above, as though set forth fully herein.

39.     Midwest Indemnity acted fraudulently and with malice (as that term is legally defined) and outrageously in denying Mr. Dominick's claim for property coverage benefits. Further, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious and reckless indifference to the rights, safety, or welfare of Mr. Dominick.

**WHEREFORE**, Plaintiff prays for judgment against Defendant for damages that are fair and reasonable, for punitive damages, for his costs incurred herein, and for all other damages and appropriate relief as the court deems fair and reasonable, in an amount not to exceed $75,000.00.

<strong><u>RESULTING LEGAL DAMAGES</u></strong>

40.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 39, above, as though set forth fully herein.

41.     Mr. Dominick is entitled to the actual damages resulting from the Defendant's violations of the law. These damages include the consequential damages to his economic welfare from the wrongful denial and delay of benefits; the mental anguish and physical suffering resulting from this wrongful denial of benefits, and continued impact on Mr. Dominick; any lost credit reputation; and the other actual damages permitted by law. In addition, Mr. Dominick is entitled to exemplary damages.

42. Mr. Dominick is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

43. Mr. Dominick is also entitled to the recovery of attorneys' fees.

WHEREFORE, Plaintiff respectfully requests that Plaintiff have judgment against Defendant for actual damages, pre- and post-judgment interest as allowed by law, costs of suit, punitive damages, and all other relief, at law or in equity, to which Plaintiff may be entitled, in an amount not to exceed $75,000.00.

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**

Respectfully submitted,

JOHNSON, VORHEES & MARTUCCI

_____
Patrick Martucci, MO Bar # 53448
Joseph Weidhaas, MO Bar # 61912
510 W. 6th St.
Joplin MO 64801
Telephone: 417-206-0100
Facsimile: 417-206-0110
e-mail: patrick@4stateslaw.com
e-mail: joe@4stateslaw.com
*ATTORNEYS FOR PLAINTIFF*

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### OFFICE OF THE CLERK

Ann Thompson
Clerk of Court

Reply To:
( ) 400 E. 9th Street
    Kansas City, MO 64106
( ) 131 West High Street
    Jefferson City, MO 65101
(x ) 222 John Q. Hammons Pkwy.
    Springfield, MO 65806

October 2, 2014

Clerk, Circuit Court of Jasper County
601 Pearl Avenue
Joplin MO  64801



FILED
-CLERK
OCT 0 6 2014
JASPER COUNTY CIRCUIT CLERK
JOPLIN, MISSOURI

    Re:    Remand of our Civil Case No. 14-5103-CV-SW-MDH
            Dominick v Midwestern Indemnity Company, The

Dear Clerk:

The above case has been remanded to your Court pursuant to an order by the Honorable
Douglas Harpool.   Pursuant to Federal Rules of Civil Procedure 28 § 1447 we are enclosing a
certified copy of the order of remand.

You may access the federal court's electronic case file at the following web address:
http://ecf.mowd.uscourts.gov.   We have assigned a login and password for state courts to use
in accessing this information.   The login is "Statecrt1" and the password is "Statecrt1".
This login and password should not be shared with anyone other than state court personnel
who would have a need to access our electronic case file system.   You will need Adobe
Acrobat reader loaded on your computer in order to view the documents.

If you need assistance, you may call the Kansas City office at 816/512-5000, the Jefferson
City office at 573/636-4015 or the Springfield office at 417/865-3869.

                    Sincerely,

                    By: Linda Howard

enc.

# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
### SOUTHWESTERN DIVISION

*ECF DOCUMENT*

I hereby attest and certify this is a printed copy of a document which . . . . . . filed with the United States District Court for the . . . . . . District of Missouri.

Date Filed: 10/3/14 ANN THOMPSON, CLERK
By: D.S./Dward Deputy Clerk

MIKE DOMINICK,                          )
                                        )
          Plaintiff,                    )
                                        )
vs.                                     )      Case No.  3:14-cv-05103-MDH
                                        )
THE MIDWESTERN INDEMNITY                )
COMPANY,                                )
                                        )
          Defendant.                    )

## ORDER

Before the Court is Plaintiff's Motion to Remand (Doc. 4) and Defendant's Partial Motion to Dismiss (Doc. 5). Defendant responded to Plaintiff's motion (Doc. 8) and Plaintiff responded to Defendant's motion (Doc. 9). Defendant further submitted reply suggestions in support of its motion (Doc. 10). The Court, after full and careful consideration of the issues raised and legal arguments provided by the parties, hereby **GRANTS** Plaintiff's Motion to Remand (Doc. 4) and **DENIES AS MOOT** Defendant's Partial Motion to Dismiss (Doc. 5).

## BACKGROUND

The facts giving rise to the present lawsuit surround the EF5 tornado that hit Joplin, Missouri on May 22, 2011. On July 3, 2012, Plaintiff filed a petition in the Circuit Court of Jasper County, Missouri, alleging Defendant insurance company wrongfully denied payment under Plaintiff's homeowner's insurance policy. According to the petition, Plaintiff's home was substantially damaged by the tornado and, after Plaintiff timely filed an insurance claim with Defendant, Defendant performed "an inadequate, incomplete, and unreasonable investigation" and "wrongfully denied Mr. Dominick's property claim by not providing full coverage under the Policy for all his damages." Pl.'s Pet. 2. The petition seeks to state causes of action for: (1)

1

breach of contract, (II) vexatious refusal, (III) fraud, and (IV) punitive damages. Pl.'s Pet. 3-7. Plaintiff requests judgment in his favor for "actual damages, pre- and post-judgment interest as allowed by law, costs of suit, punitive damages, and all other relief, at law or in equity, to which Plaintiff may be entitled, in an amount not to exceed $75,000." Pl.'s Pet. 8.

On August 11, 2014, Defendant filed a notice of removal to litigate the case in federal court. Defendant seeks to remove the case on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1) and (2). Def.'s Notice of Removal 2. Defendant's notice of removal describes the citizenship of each party and notes that "the plaintiff's allegations of requisite jurisdiction amount are not necessarily dispositive of the issue." Def.'s Notice of Removal 2-4. Rather, Defendant calculates the amount in controversy by adding Plaintiff's roof repair estimate ($35,077.69), Plaintiff's claimed property costs other than roof-repair,[1] possible statutory penalties under the vexatious refusal statute (20% of first $1,500 and 10% of remaining amount), possible attorney's fees recoverable under the vexatious refusal statute (estimate 25% contingency fee), and possible punitive damages, and concludes that "[t]he potential damages recoverable, . . . exceed the $75,000 threshold." Def.'s Notice of Removal 5-6.

On August 13, 2014, Plaintiff filed a motion to remand. In his motion, Plaintiff acknowledges diversity of citizenship but claims (1) Defendant did not file its notice of removal within thirty (30) days as required under 28 U.S.C. § 1446(b)(1), and (2) Defendant failed to meet its burden to show with a legal certainty that the amount in controversy exceeds $75,000. Pl.'s Mot. Remand 1-4. Plaintiff argues that Defendant "received" a copy of the petition on July

---

[1] "During the claims process, Plaintiff submitted a repair estimate totaling $36,077.69. See Exhibit C, Affidavit ¶4, and the attached exhibit. This figure should be reduced to $35,077.69 to account for the $1,000 deductible paid by the plaintiff. However, this $35,000 only applies to roof repairs. As stated above, Plaintiff is also seeking damages for: (a) water leakage caused by the roof damage, (b) damage to the outside pond and storage shed roof, (c) damages to the interior, (d) damages to bricks, (e) damages to gates, (f) damages to trees (including damages for tree removal), (g) damages to chimney caps, and (h) damages to contents. See Exhibit B, Petition, ¶ 14." Def.'s Notice of Removal ¶ 15.

3, 2014, when counsel for Plaintiff emailed a copy to Defendant. Pl.'s Mot. Remand 2. Because "August 11 is 39 days after July 3," Plaintiff claims "Defendant, therefore, failed to follow the proper procedures for remand." Pl.'s Mot. Remand 2. Furthermore, Plaintiff argues remand is proper because Defendant failed to show to a legal certainty that the amount in controversy exceeds $75,000 because Defendant "gave no estimate of the value or amount of that damage to those other [non-roof] parts of Plaintiff's house." Pl.'s Mot. Remand 4.

Defendant argues in response that its notice of removal was timely filed and that its calculation of Plaintiff's claims was sufficient to satisfy its burden to prove the jurisdictional threshold. Defendant claims that the receipt of a courtesy copy of the petition does not begin to run the thirty-day time limit to file a notice of removal; instead, "Courts have been clear that the 30-day time period in which to remove does not start to run until actual service of summons and complaint." Def.'s Sugg. Opp'n Remand 1. Assuming arguendo that initial service was proper on July 11, 2014, Defendant concludes that its notice of removal filed August 11, 2014 was within the thirty (30) day deadline.[2] Def.'s Sugg. Opp'n Remand 2. Defendant then restated its prior calculation of Plaintiff's claims and argues that this calculation satisfies the requirements of 28 U.S.C. § 1332(a) to a legal certainty. Def.'s Sugg. Opp'n Remand 4-7.

On August 18, 2014, Defendant filed its Partial Motion to Dismiss for failure to state a claim. Within its motion, Defendant asks the Court to dismiss Plaintiff's asserted claims for

---

[2] Defendant agues it was not properly served until August 25, 2014. Def.'s Sugg. Opp'n Remand 3. Defendant explained in its notice of removal:

> According to Missouri Case Net, Plaintiff attempted to serve Midwestern through the Missouri Department of Insurance on July 11, 2014. See Exhibit A, Missouri Case Net Docket Entry, Case No. 14AO-CC00188. However, as Plaintiff erroneously identified defendant as "The Midwest [sic] Indemnity Company" in his petition, it appears from Missouri Case Net that the Department of Insurance sent a Notice of Rejection of Service to Plaintiff on July 17, 2014. See Exhibit A. Based upon the information available to it, Midwestern does not believe that it was effectively served on July 11, 2014. However, the Cole County Sheriff filed the return of service on July 18, 2014, indicating that Defendant Midwestern had been served on July 11, 2014. See Exhibit A. Out of an abundance of caution, Midwestern is removing this action, as if it had been properly served on July 11, 2014, to comply with the thirty (30) day deadline. Def.'s Notice of Removal ¶ 2.

3

fraud (Count III) and punitive damages (Count IV). Defendant argues that tort actions based on insurance contracts are prohibited under Missouri law and, therefore, because Plaintiff's fraud claim is based on the insurance contract, it is inappropriate and should be dismissed. Def.'s Mot. Dismiss 1. Defendant argues that Plaintiff's claim for punitive damages should be dismissed because it arises only from Plaintiff's fraud claim. Def.'s Mot. Dismiss 2. Plaintiff counters that the fraud claim should not be dismissed because it is "not dependent on the elements of the contract claim" and it is therefore not preempted by Missouri law. Pl.'s Sugg. Opp'n Dismiss 5. Defendant concludes that "Plaintiff has simply re-characterized the [same set of underlying] facts to pursue a theory in tort," and because Plaintiff "failed to articulate a separate and district tort," dismissal is appropriate. Def.'s Sugg. Supp. Dismiss 1.

## ANALYSIS

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). Plaintiff's motion for remand challenges the Court's jurisdiction; therefore, the Court must address that issue first. *See Warner v. Chase Home Fin. LLC*, 530 F. App'x 614, 615 (8th Cir. 2013).

### A. Motion for Remand

An action may be removed from state court to federal district court if the case falls within the original jurisdiction of the district court. 28 U.S.C. § 1441(a). If the case is not within the original jurisdiction of the district court, the court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). A defendant seeking removal "bears the burden of establishing that the district court ha[s] original jurisdiction by a preponderance of the evidence." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011). "All doubts about federal

4

jurisdiction should be resolved in favor of remand to state court." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010). The procedure for removal is contained in 28 U.S.C. § 1446.

### 1. Time for Removal

Section 1446 states that the notice of removal "shall be filed within 30 days after the receipt of the defendant, through service or otherwise, of a copy of the initial pleading[.]" 28 U.S.C. § 1446(b)(1). Plaintiff claims Defendant received a copy of the petition "through service or otherwise" when Plaintiff's counsel emailed a copy of the Petition to Defendant on July 3, 2014. Plaintiff's argument is contrary to clear Supreme Court, Eighth Circuit, and Western District of Missouri precedents. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 756 (8th Cir. 2001); *Oakdale Mall Associates v. Cincinnati Ins. Co.*, Case No. 11-0562-CV-W-FJG, 2011 WL 2729443 (W.D. Mo. July 13, 2011).

In *Murphy Bros.*, the Supreme Court held that a "courtesy copy" of the file-stamped complaint, which was faxed from plaintiff's counsel to defendant, was insufficient to trigger the thirty-day period under section 1446(b). *Id.* Although defendant received a copy of the complaint at that time, the Court explained that the "receipt . . . through service or otherwise" language within the section 1446 was added by legislators merely to increase uniformity among states and to ensure an adequate amount of time for persons to remove; [3] it was not intended to "dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant." *Id.* at 351-53. The Court further clarified that under the statute "the defendant's period for removal will be no less than 30 days from service [of summons], and in some categories, it will be more than 30 days from service [of

---

[3] For example, in those states where the service of a summons commences an action (even before a pleading is filed), it was possible for the period of removal to expire before the defendant obtained access to the complaint. *Id.*

5

summons], depending on when the complaint is received." *Id.* at 354. To hold otherwise would "effect so strange a change . . . in which one's procedural rights slip away before service of a summons, i.e., before one is subject to any court's authority." *Id.* at 356. The Court concluded that, because the faxed "courtesy-copy" of the complaint was not formal service of process, the defendant's time to remove was not triggered. *See id.*

A recent decision from the Western District of Missouri also rejected Plaintiff's argument. *Oakdale Mall Associates v. Cincinnati Ins. Co.*, 2011 WL 2729443 (W.D. Mo. July 13, 2011). In that case, the court struck down an argument that removal was untimely where defendant filed its notice of removal more than thirty days after it received a copy of the petition from plaintiff's counsel as an exhibit in another case. *Id.* Judge Gaitan held that "as the Supreme Court found twelve years ago, formal service of process is a necessary prerequisite to trigger the 30–day time period for removal." *Id.* The Judge further warned counsel that "any lawyer reading the Supreme Court's opinion in *Murphy Bros.* ought to have recognized that [certain cases] had been overruled" and that citation to overruled law "borders perilously close to sanctionable behavior under Rule 11." *Id.*

Under these precedents, the Court concludes Defendant's thirty-day period to remove under section 1446 commenced on the date Defendant was formally served with process, not on the date that Plaintiff emailed defense counsel a copy of the petition. Assuming *arguendo* that Defendant was effectively served on the date listed in the sheriff's initial return of service, Defendant received formal service of summons and complaint on July 11, 2014. Because Defendant filed its notice of removal on August 11, 2014, within the thirty-day period required under 28 U.S.C. § 1446(b)(1),[4] Defendant's removal was timely. The Court denies Plaintiff's

---

[4] The Court notes that August 11, 2014 is actually thirty-one days after July 11, 2014. However, as the federal rules of civil procedure indicate, "When the period is stated in days or a longer unit of time: (A) exclude the day of the

6

untimeliness argument as basis for remand. The Court also rejects Plaintiff's contention that "[u]nder clear case law, Plaintiff's Motion to Remand for Defendant's failure to observe the 30-day time limit should be granted," and refers Plaintiff's counsel to Judge Gaitan's warning in *Oakdale Mall Associates*.

## 2. Amount-in-Controversy

Section 1446 contains certain requirements for removing a case on the basis of diversity of citizenship under 28 U.S.C. § 1332(a). 28 U.S.C. § 1446(c). As to the amount-in-controversy requirement, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy[.]" *Id.* at § 1446(c)(2). While the damage amount stated by plaintiff is "usually determinative of the amount in dispute," "it is not necessarily dispositive." *Peng Vang v. Mid-Century Ins. Co.*, 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013). Furthermore, where the plaintiff attempts to avoid federal jurisdiction by pleading damages "not to exceed $75,000" but the plaintiff does not enter into a binding stipulation to that effect prior to the filing of the notice of removal, the plaintiff's demand is not necessarily conclusive. *See McGowan v. Hartford Fire Ins. Co.*, Case No. 4:11CV1669 HEA, 2012 WL 3038532 (E.D. Mo. July 25, 2012).

If the plaintiff does not demand a specific sum of damages or can recover damages in excess of the sum demanded, then the federal court may retain jurisdiction if the defendant proves "by the preponderance of the evidence, that the amount in controversy exceeds

---

event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the least day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1); Local Rule 6.1. Here, the last day of the thirty-day period was a Sunday; thus, Defendant had until the next day, July 11, 2014, to file its notice of removal. *See Boulet v. Millers Mut. Ins. Ass'n of Ill.*, 36 F.R.D. 99, 100 (D. Minn. 1964) (citing *Union National Bank v. Lamb*, 337 U.S. 38 (1949)).

7

Case 3:14-cv-05146-MJW Document 1-4 Filed 11/07/14 Page 16 of 48

[\$75,000]." *See id.* at § 1446(c)(2). [5]  In determining whether the defendant has met this burden, "the question is not whether the damages will exceed the jurisdictional amount, but whether a fact finder might legally find that the damages exceed that amount." *Walz v. FedEx Office & Print Servs., Inc.*, Case No. 2:12-CV-04188-NKL, 2012 WL 5386058 (W.D. Mo. Nov. 2, 2012).

In computing the amount in controversy, the defendant may properly include punitive damages, although those claims are "given closer scrutiny" and "the trial judge [is] accorded greater discretion" in determining the amount. *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994). In a Missouri vexatious refusal case, the removing party may also include statutory penalties and attorney's fees along with the plaintiff's breach of contract damages. *Peng Vang v. Mid-Century Ins. Co.*, 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013); *see also.Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) ("*statutory* attorney fees count toward the jurisdictional minimum calculation" (emphasis added)).   Eighth Circuit courts hold that, in calculating the amount in controversy, it is reasonable to estimate attorney's fees based upon a 25% contingency fee. *Peng Vang*, 2013 WL 626985 at \*2; *Young v. State Farm Fire & Cas. Co.*, No. 4:08CV1891MLM, 2010 WL 173832, at \*2 (E.D.Mo. Jan. 15, 2010).

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012) (citing *Bell v. Hershey Co.*, 557 F.3d 953, 956

---

[5] Plaintiff states that "Defendant, for its part, misleads the Court by claiming it need only show by a 'preponderance of the evidence' the existence of the jurisdictional amount. . . . Missouri federal courts apply the 'legal certainty' test[.]" Pl.'s Mot. Remand 2. To support this contention, Plaintiff cites a 1998 case from the Eastern District of Missouri. *See Rodery v. Hardee's Food Sys., Inc.*, 995 F. Supp. 999, 1000 (E.D. Mo. 1998). Because the removal statute as amended in 2011 clearly states the "preponderance of the evidence" standard, and because Eighth Circuit case law since that time is clear on the issue, the Court again reminds Plaintiff's counsel of Judge Gaitan's warning in *Oakdale Mall Associates. See* text *supra* at 6.

8

(8th Cir. 2009)). The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Basham v. Am. Nat. Cnty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 886 (W.D. Ark. 2013) (citing *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir.2011)).

Here, Defendant failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Defendant itemized actual damages of $35,077.69. Based on this figure, plus potential statutory penalties,[6] plus a reasonable estimate of attorney's fees, the total amount in controversy proven by Defendant is $48,419.75, which does not meet the jurisdictional threshold.[7] While the figure above does not include damages for the "other" non-roof repairs, Defendant failed to present any evidence that a "fact finder might legally find" such damages would render the amount in controversy greater than $75,000. Defendant presented no estimates of the non-roof repairs, nor did Defendant cite any case law based on analogous facts. *See Harris v. TransAmerica Life Ins. Co.*, Case No. 4:14-CV-186 CEJ, 2014 WL 1316245 at *1 (E.D. Mo. Apr. 2, 2014) (holding that "defendant must present some specific facts or evidence" to meet its burden and that such evidence "may include citations to similar cases"). According to the Court's calculation,[8] Defendant would need to show that a fact-finder could legally find these "other" repairs totaled nearly $20,000 in order to meet the jurisdictional threshold.[9] Here, Defendant presented no evidence to support this conclusion.

---

[6] The amount of the statutory penalty before attorney's fees is 20% of the first $1,500 of loss plus 10% of the remaining amount of loss in excess of $1,500. Mo. Rev. Stat. § 375.420.

[7] $35,078 + ($1,500 x .15) + ($33,578 x .10) = $38,735.80 + ($38,735.80 x .25) = $48,419.75

[8] $54,500 + ($1,500 x .15) + ($53,000 x .10) = $60,100 + ($60,100 x .25) = $75,125.00

[9] Compare to *Peng Vang v. Mid-Century Ins. Co.*, Case No. 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013) (holding jurisdictional amount satisfied where plaintiff's explicit monetary demand, prior to inclusion of attorneys' fees and loss for debris removal, equaled $63,400) and *Harris v. TransAmerica Life Ins. Co.*, Case No. 4:14-CV-186 CEJ, 2014 WL 1316245 at *1 (E.D. Mo. Apr. 2, 2014) (holding jurisdictional amount satisfied where

9

Moreover, the above figure does not include punitive damages. However, the Court finds no basis for punitive damages under Missouri law. As stated above, courts are to examine punitive damage claims with "closer scrutiny" than claims for actual damages. The "existence of the required amount [of punitive damages] must be supported by competent proof." *See Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994). Where a plaintiff is unable to recover punitive damages on the facts alleged, punitive damages are not includable in the jurisdictional amount. *See id.*; *Allison v. Sec. Ben. Life Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992). Furthermore, "the mere fact . . . that the Plaintiffs [assert] a claim for punitive damages, does not relieve . . . the removing party, from proving that, more likely than not, punitive damages will cause the amount in controversy to exceed \$75,000." *Varboncoeur v. State Farm Fire & Cas. Co.*, 356 F. Supp. 2d 935, 949 (S.D. Iowa 2005).

Defendant failed to present any specific facts or evidence that a fact-finder could legally award punitive damages such that the amount-in-controversy exceeds \$75,000. As the Eastern District of Missouri recently summarized:

> Under Missouri law, "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract. Damages for breach of contract are limited to the loss of the benefit itself." If the insurance company has refused to pay without reasonable cause or excuse, Mo.Rev.Stat. § 375.420 also permits a plaintiff to recover "consequential damages, such as attorneys' fees and interest associated with collection." However, a party complaining of breach of an insurance contract may not also bring a tort claim dependent upon the elements of the contract claim. In other words, the facts that form the basis for the tort claim must be independent from the facts underlying the contract and vexatious refusal to pay claims in order for the tort claim to survive a motion to dismiss.

*Ingrassia v. OneBeacon Ins. Grp.*, 4:14 CV 1216 CDP, 2014 WL 4639171 (E.D. Mo. Sept. 16, 2014) (internal citations omitted).

---

actual damages and statutory penalties totaled \$63,950 prior to inclusion of attorneys' fees or alleged punitive damages.)

Here, Plaintiff's claim for punitive damages arises solely from his fraud claim. Plaintiff's fraud claim alleges that Defendant misrepresented the insurance policy because it "made a representation to Plaintiff that [Defendant] would provide insurance coverage in accordance with the Policy issued for Plaintiff's property located at [address] but have not provided insurance coverage in accordance with the Policy." Pl.'s Pet. ¶ 29. The facts underlying Plaintiff's fraud claim are clearly not "independent" from those underlying his breach of contract claim; rather, as Defendant points out, "Plaintiff has simply re-characterized the [same set of underlying] facts to pursue a theory in tort." Even Plaintiff admitted that "[t]he misrepresentation is that Defendant represented it would provide coverage in accordance with the Policy." This type of tort is clearly prohibited in insurance cases under Missouri law. *See Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284 (Mo. Ct. App. 2008). Accordingly, the Court cannot conclude that "a fact finder might *legally* find" punitive damages in this case, such that the amount in controversy exceeds $75,000.

In sum, Defendant failed to prove "by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." Defendant did not satisfy its burden by merely copying portions of the petition and reciting legal rules, thereby concluding the sum exceeds $75,000. Where, as here, the petition pleads an unspecified amount of damages, the removing party must present some specific facts or evidence demonstrating that the amount in controversy exceeds $75,000. Defendant's notice of removal and response to Plaintiff's motion for remand lack application including, for example, any estimate of non-roof repairs, any tangible calculation showing how damages exceed $75,000, or any reference to a factually analogous case that held the amount-in-controversy requirement was satisfied. Because Defendant failed to show the

amount in controversy exceeds $75,000, and because "all doubts about federal jurisdiction must be resolved in favor of remand" the Court grants Plaintiff's motion.

### B. Motion to Dismiss

The Court grants Plaintiff's motion to remand; therefore, the Court is without jurisdiction to reach the merits of Defendant's motion to dismiss. Defendant's motion is denied as moot.

### DECISION

Defendant failed to satisfy the requirements of 28 U.S.C. § 1446(c) by failing to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Accordingly, Plaintiff's Motion to Remand (Doc. 4) is **GRANTED** and Defendant's Partial Motion to Dismiss (Doc. 5) is **DENIED AS MOOT**. The Court hereby orders that the case is remanded to the Circuit Court of Jasper County, Missouri.

**IT IS SO ORDERED.**

DATED:     October 2, 2014

/s/ *Douglas Harpool*
DOUGLAS HARPOOL
UNITED STATES DISTRICT JUDGE

Case 3:14-cv-05146-MJW   Document 1-4   Filed 11/07/14   Page 21 of 48

IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI
AT JOPLIN

MIKE DOMINICK                          )
                                       )
         Plaintiff,                    )
                                       )        Case No. 14AO-CC00188
                                       )
v.                                     )
                                       )
THE MIDWESTERN INDEMNITY               )
COMPANY                                )
                                       )
         Defendant.                    )

## DEFENDANT'S MOTION TO DIMISS

Defendant The Midwestern Indemnity Company, pursuant to Rule 55.27 of the Missouri Rules of Civil Procedure, moves this Court to dismiss Counts III and IV of Plaintiff Mike Dominick's Petition for Damages, which was recently remanded from federal court. Plaintiff claims that Midwestern Indemnity wrongfully denied his claim for insurance benefits, arising out of alleged property damage to his residential property caused by the Joplin Tornado of May 22, 2011. In addition to the breach of contract claim asserted in Count I, Plaintiff has asserted claims labeled as "Vexatious Refusal" (Count II), "Fraud" (Count III), "Punitive Damages" (Count IV), and "Resulting Legal Damages."

Missouri courts have repeatedly held that the Missouri legislature has created proper remedies for first-party breach of contract claims against insurers. Consequently, Missouri courts have uniformly prohibited any tort actions based upon such insurance contracts. Accordingly, Count III of Plaintiff's Petition, which is based on fraud, should be dismissed with prejudice. Additionally, as the fraud count must be dismissed to comply with Missouri law, Count IV should also be dismissed because the only basis for punitive damages in this action is plaintiff's fraud claim. Punitive damages are not warranted in this action when the sole

1

remaining counts pertain to breach of contract and vexatious refusal. For the Court's consideration, Midwestern Indemnity's Suggestions in Support are filed contemporaneously herewith.

Respectfully submitted,

**SEYFERTH BLUMENTHAL &
HARRIS LLC**

*/s/ Peter K. Andreone*
Bruce A. Moothart, MO Bar # 45517
Peter K. Andreone, MO Bar # 60631
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700 (Telephone)
(816) 756-3700 (Facsimile)
bruce@sbhlaw.com
peter@sbhlaw.com
*Attorneys for Defendant*
*The Midwestern Indemnity Company*

2

Electronically Filed - Jasper County - Joplin - October 07, 2014 - 10:09 AM

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of October, 2014, a true and accurate copy of the above "The Midwestern Indemnity Company's Partial Motion to Dismiss" was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's electronic filing system to:

Patrick Martucci, MO Bar # 53448
Joseph Weidhaas, MO Bar # 61912
510 W. 6th Street
Joplin, MO 64801
Telephone: (417) 206-0100
Facsimile: (417) 206-0110
Email: patrick@4stateslaw.com
        joe@4stateslaw.com

*Attorneys for Plaintiff Mike Dominick*

/s/ Peter K. Andreone
*Attorney for Defendant*
*The Midwestern Indemnity Company*

3

IN THE CIRCUIT COURT OF JASPER COUNTY, MISSOURI
AT JOPLIN

MIKE DOMINICK                          )
                                       )
            Plaintiff,                 )
                                       )     Case No. 14AO-CC00188
                                       )
v.                                     )
                                       )
THE MIDWESTERN INDEMNITY               )
COMPANY                                )
                                       )
            Defendant.                 )

## DEFENDANT'S REQUEST FOR HEARING

Defendant The Midwestern Indemnity Company ("Midwestern Indemnity"), pursuant to

Rule 55.27 of the Missouri Rules of Civil Procedure and Local Rule 33.1, hereby requests a

hearing date for the Court to hear oral argument on Midwestern Indemnity's Partial Motion to

Dismiss.

Respectfully submitted,

**SEYFERTH BLUMENTHAL &**
**HARRIS LLC**

*/s/ Peter K. Andreone*
Bruce A. Moothart, MO Bar # 45517
Peter K. Andreone, MO Bar # 60631
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700 (Telephone)
(816) 756-3700 (Facsimile)
bruce@sbhlaw.com
peter@sbhlaw.com
*Attorneys for Defendant*
*The Midwestern Indemnity Company*

1

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 7th day of October, 2014, a true and accurate copy of the above "Defendant's Request for Hearing" was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's electronic filing system to:

Patrick Martucci, MO Bar # 53448
Joseph Weidhaas, MO Bar # 61912
510 W. 6th Street
Joplin, MO 64801
Telephone: (417) 206-0100
Facsimile: (417) 206-0110
Email: patrick@4stateslaw.com
      joe@4stateslaw.com

*Attorneys for Plaintiff Mike Dominick*

/s/ Peter K. Andreone
**Attorney for Defendant**
*The Midwestern Indemnity Company*

2

MIKE DOMINICK )
)
      Plaintiff, )
)    Case No. 14AO-CC00188
)
v. )
)
THE MIDWESTERN INDEMNITY )
COMPANY )
)
      Defendant. )

## SUGGESTIONS IN SUPPORT OF
## THE MIDWESTERN INDEMNITY COMPANY'S PARTIAL MOTION TO DISMISS

Defendant The Midwestern Insurance Company ("Defendant" or "Midwestern") offers the following Suggestions in Support of its Partial Motion to Dismiss pursuant to Missouri Rule of Civil Procedure 55.27 and Local Rule 33.1.

### I.    INTRODUCTION

Defendant Midwestern insured Plaintiff's residential property located at 5390 East 23rd Street, Joplin, Missouri ("Dominick Property"). [Petition, § 4.] Plaintiff has alleged that his home was substantially damaged by the Joplin Tornado of May 22, 2011. [Petition, §§ 5, 6.] Specifically, Plaintiff has alleged that the tornado caused "irreparable damage to the home's roof and outside pond and storage shed roof, and damage to the interior, bricks, gates, trees (including damages for tree removal), chimney caps, and contents, and consequential damages arising from the damage." [Petition, § 6.] To date, Midwestern has denied payment for all of the damages demanded by Plaintiff in the underlying insurance claim. [Petition, § 10.]

In his Petition for Damages, Plaintiff asserted four counts against Defendant Midwestern. [*See* Petition, generally.] Count I, styled "Breach of Contract," asserts that Midwestern

1

Indemnity breached the insuring agreement by "refus[ing] to pay claimed benefits for all damages to Mr. Dominick's property due to the tornado in accordance with the Policy." [Petition, § 14.] Count II is labeled "Vexatious Refusal." Plaintiff claims that "Midwestern Indemnity failed to attempt to effectuate a prompt, fair, and equitable settlement of a claim without reasonable cause of excuse and Midwestern Indemnity's refusal to pay the claimed loss is without reasonable cause and excuse. Defendant Midwestern Indemnity's failure and refusal are, therefore, vexatious within the meaning of RSMo. § 375.296 and § 375.420." [Petition, § 27.] Count III is labeled "Fraud." In short, Plaintiff claims that Midwestern knowingly or recklessly made false representations about the Policy with the intent to induce Plaintiff to rely upon such misrepresentations to his detriment. [*See* Petition, §§ 29-37.] In conjunction with this count, Plaintiff seeks punitive damages. [Petition, Count III, Prayer for Relief.] Count IV is labeled "Punitive Damages. In this count, Plaintiff alleges that "Midwestern Indemnity acted fraudulently and with malice...and outrageously in denying Mr. Dominick's claim for property damage benefits." [Petition, § 39.] Plaintiff also seeks "Resulting Legal Damages" in Paragraphs 40-43 of his Petition.

Plaintiff is barred from pursuing tort theories where his tort actions are based on the same conduct alleged to constitute a breach of contract. Count III of the Plaintiff's Petition is dependent on and cannot be separated from his breach of contract claim. Accordingly, the Court should dismiss Count III. As it is proper to dismiss the fraud count, Count IV for punitive damages must also be dismissed because Plaintiff's only basis for punitive damages is fraud.

## II.     LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the facts alleged in the petition are taken to be true, and the pleading party is given all favorable inferences. *Anderson v.*

2

*Village of Jacksonville*, 103 S.W.3d 190 (Mo. App. W.D. 2003). However, legal conclusions are not deemed admitted. *Solberg v. Graven*, 174 S.W.3d 695 (Mo. App. S.D. 2006). The Court "must determine if the facts alleged meet the elements of a recognized cause of action." *Sill v. Burlington Northern Railroad*, 87 S.W.3d 386, 391 (Mo. App. S.D. 2002).

## III.    ARGUMENT

### A.    Plaintiff's Fraud Claim Should Be Dismissed Because It Is Based On And Dependent Upon the Parties' Insurance Contract.

This lawsuit involves a breach of contract action that hinges on a dispute between Midwestern Indemnity and Plaintiff regarding insurance coverage. In addition to his breach of contract claim, Plaintiff has also asserted the tort claim of fraud. However, Missouri courts have specifically prohibited insureds from pursuing tort causes of action in the context of first party insurance contract claims. *See Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 67 (Mo. 2000) (en banc) (recognizing "the insureds remedy is limited to that provided by the law of contract plus, if [Mo. Rev. Stat.] 375.420 applies, the enhancements provided by the statute").

Missouri courts first rejected the notion of allowing tort claims for "bad faith" in the context of first party insurance claims in *Duncan v. Andrew Cty. Mut. Ins. Co.*, 665 S.W.2d 13 (Mo. Ct. App. W.D. 1984). In *Duncan*, an insured sued its insurer under a theft policy, seeking actual and punitive damages in tort predicated on the insurer's alleged bad faith refusal to pay the theft loss. The trial court dismissed the tort cause of action for failure to state a claim under Missouri law because "the tort of bad faith in a first party claim against insurance companies has not been recognized in Missouri." *Id*. at 14. The appellate court affirmed the trial court's ruling stating:

> In sum, this court rejects the extension of the tort of bad faith applicable to third party claims in the context of liability insurance to first party claims in the context

3

of property and related insurance on both principles heretofore discussed—(1) inherent contextual differences distinguishing and separating the two types of claims and (2) legislative preemption.

*Id.* at 20.

Three years later, encountering a similar issue, Missouri's Supreme Court recognized and followed the holding in *Duncan*. *See Catron v. Columbia Mut. Ins. Co.*, 723 S.W.2d 5 (Mo. 1987) (en banc). In *Catron*, an insured filed suit for bad faith and prima facie tort, which the trial court dismissed. The Supreme Court affirmed the dismissal, holding that "the *Duncan* decision effectively eliminated the bad faith tort in first party claims by an insured." *Id.* at 6. Several decisions from Missouri's appellate courts are in accord. *See Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 742 (Mo. Ct. App. S.D. 1989) (affirming dismissal of counts for various negligent and tortious acts in fire loss claim because the damages are limited to those provided for in Mo. Rev. Stat. § 375.420); *Shafer v. Auto. Club Inter-Ins. Exch.*, 778 S.W.2d 395, 400 (Mo. Ct. App. S.D. 1989) (holding that trial court made no error in dismissing claim for tort-based remedy in context of uninsured motorist benefits).

Missouri courts have only allowed tort claims against insurers in first party insurance actions in the limited circumstance where the tort claim is separate, distinct, and not dependent on the insured's claim for breach of contract. For example, in *Overcast*, the Missouri Supreme Court held that a tort claim for defamation stemming from an allegation of arson stated a separate and distinct claim from the plaintiff's contractual claim because it was not based on the insurer's refusal to pay. *Overcast*, 11 S.W.3d at 70. Conversely, a tort claim that is based upon the insurer's refusal to pay is not a claim based on separate and distinct tortious conduct of an insurer. For example, in *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 290 (Mo. Ct. App. E.D. 2008), while affirming the trial court's dismissal of tort claims for fraud

4

and negligent misrepresentation, the United States District Court for the Eastern District of Missouri stated:

> Appellant maintains that *Overcast* held that its **fraud** and negligent representation claims are not preempted by the vexatious refusal to pay statute, Section 375.420. However, the Supreme Court in *Overcast* stated that Section 375.420 does not provide for preemption per se. It is still the law though that an insured with a dispute against its insurance company cannot substitute a tort claim when a contract remedy is available. Overcast concerned a defamation suit which, as the Supreme Court noted, is not related to the common law contract remedy. Appellant's **fraud** and negligent representation claims against Assurance are related to its breach of contract and vexatious refusal to pay claims. Accordingly, Appellant's assertion is without merit.

*Id.* (emphasis added).

Unlike *Overcast*, Plaintiff Dominick has failed to plead any independent tort. Plaintiff's claim for fraud under Count III arises out of and is necessarily dependent on his claims for breach of contract. More specifically, in Count III, Plaintiff has alleged that:

(a)    Midwestern "misrepresented the insurance Policy that affords property coverage to Mr. Dominick, by making an untrue statement of material fact;" [Petition, § 29]

(b)    Midwestern "made a representation to Plaintiff that [Midwestern] would provide insurance coverage in according with the Policy…but have not provided insurance coverage in accordance with the Policy;" [Petition, § 29]

(c)    Midwestern "misrepresented the insurance Policy…by failing to state a material fact that is necessary to make other statements made not misleading;" [Petition, § 30]

5

(d)     Midwestern misrepresented the insurance policy…by making a statement in such manner as to mislead a reasonably prudent person to a false conclusion of material fact, and failing to disclose a matter required by law to be disclosed;" [Petition, § 31]

(e)     "The representations made by Defendant were material, false, were either known to be false or was recklessly made without knowledge of its truth or falsity, and were made with the intent it should be acted on by Plaintiff in a manner reasonably contemplated;" and [Petition, § 32]

(f)     "As a direct and proximate result of Defendant's false representations, Plaintiff sustained damages." [Petition, § 36]

The allegations in Count III are simply another way of alleging that Midwestern Indemnity breached the insuring agreement by not paying for the purported damage to Plaintiff and/or misrepresenting the policy in some way. This case is not similar to *Overcast* where the plaintiff had pled a separate and independent tort: defamation. Plaintiff Dominick's allegation of fraud derives from the insurance contract and is born out of alleged misrepresentations about the contract. Missouri law, as clearly stated in the *Overcast* and the *Ryann Spencer Grp., Inc.* opinions, prohibit Plaintiff from converting his breach of contract claim against Midwestern Indemnity into a tort claim.

## B.     Plaintiff's Claim For Punitive Damages Should Be Dismissed Because It Is Based On and Dependent Upon Fraud.

As it is proper to dismiss the fraud count, the Court should also dismiss Plaintiff's claim for punitive damages (Count IV) because it is only based on the alleged fraud. In Count IV, Plaintiff solely alleged that Midwestern Indemnity "acted fraudulently and with malice (as the term is legally defined) and outrageously in denying Mr. Dominick's claim for property coverage

6

benefits. Further, Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious and reckless indifference to the rights, safety, or welfare of Mr. Dominick." [Petition, § 39] Under Missouri law, it is clear that punitive damages are not recoverable in an action brought for the mere breach of a contract. *Otto v. Imperial Cas. & Indem. Co.*, 277 F.2d 889, 893 (8th Cir. 1960) (citing *Williams v. Kansas City Public Service Co.*, 294 S.W.2d 36, 40 (Mo. 1956)). Punitive damages are only recoverable in Missouri "where the breach amounts to an independent, willful tort and there are proper allegations of malice, wantonness or oppression." *Comerio v. Beatrice Foods Co.*, 595 F. Supp. 918 (E.D. Mo. 1984) (citing *Sands v. R.G. McKelvey Building Company*, 571 S.W.2d 726, 733 (Mo.Ct.App. 1978)). For the reasons explained in greater detail above, Plaintiff has failed to allege any independent tort. As the punitive damages are based on fraud, and the fraud count is prohibited under Missouri law, Count IV for punitive damages should also be dismissed.

**C.** **The Western District of Missouri Remanded This Case Back to the Circuit Court of Jasper County, in Part, Because the Fraud Claim and Punitive Damages Claims Are Not Proper Under Missouri Law.**

For the Court's consideration, attached as "Exhibit A" to this Partial Motion to Dismiss is the Order entered by the Western District of Missouri, Southwestern Division, remanding this civil action back to the Circuit Court of Jasper County. The remand was based, in part, on the fact that the fraud and punitive damages claims asserted by Plaintiff are not justified under Missouri law. The Court found that Defendant failed to demonstrate that the amount in controversy exceeded $75,000.00, the jurisdictional threshold. Defendant had argued that the Western District should consider a potential award of punitive damages in determining whether the $75,000.00 threshold had been satisfied. The Court stated that Plaintiff's fraud claim "is clearly prohibited in insurance cases under Missouri law" and that there is "no basis for punitive

7

damages under Missouri law." *See* "Exhibit A" at pp. 10-12. The Court specifically cited to the

*Ingrassia v. OneBeacon Ins. Grp.* opinion, in which the Eastern District stated:

> Under Missouri law, "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract. Damages for breach of contract are limited to the loss of the benefit itself." If the insurance company has refused to pay without reasonable cause of excuse, Mo.Rev.Stat. § 375.420 also permits a plaintiff to recover "consequential damages, such as attorneys' fees and interest associated with collection." However, a party complaining of breach of an insurance contract may not also bring a tort claim dependent upon the elements of the contract claim. In other words, the facts that form the basis for the tort claim must be independent from the facts underlying the contract and vexatious refusal to pay claims in order for the tort claim to survive a motion to dismiss.

*Ingrassia v. OneBeacon Ins. Grp.*, 2014 WL 4639171 (Mo. App. E.D. Sept. 16, 2014) (internal citations omitted).

As Plaintiff's fraud and punitive damages claims are based on the same set of facts as the

contract claims, Counts III and IV should be dismissed.

Respectfully submitted,

**SEYFERTH BLUMENTHAL & HARRIS LLC**

*/s/ Peter K. Andreone*
Bruce A. Moothart, MO Bar # 45517
Peter K. Andreone, MO Bar # 60631
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700 (Telephone)
(816) 756-3700 (Facsimile)
bruce@sbhlaw.com
peter@sbhlaw.com
*Attorneys for Defendant*
*The Midwestern Indemnity Company*

8

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of October, 2014, a true and accurate copy of the above "Suggestions in Support of The Midwestern Indemnity Company's Partial Motion to Dismiss" was filed electronically with the Court, with notice of the filing generated and sent electronically by the Court's electronic filing system to:

Patrick Martucci, MO Bar # 53448
Joseph Weidhaas, MO Bar # 61912
510 W. 6th Street
Joplin, MO 64801
Telephone: (417) 206-0100
Facsimile: (417) 206-0110
Email: patrick@4stateslaw.com
        joe@4stateslaw.com

*Attorneys for Plaintiff Mike Dominick*

                            /s/ Peter K. Andreone
                            *Attorney for Defendant*
                            *The Midwestern Indemnity Company*

9

MIKE DOMINICK, )
)
          Plaintiff, )
)
vs. )     Case No. 3:14-cv-05103-MDH
)
THE MIDWESTERN INDEMNITY )
COMPANY, )
)
          Defendant. )

## ORDER

Before the Court is Plaintiff's Motion to Remand (Doc. 4) and Defendant's Partial

Motion to Dismiss (Doc. 5). Defendant responded to Plaintiff's motion (Doc. 8) and Plaintiff

responded to Defendant's motion (Doc. 9). Defendant further submitted reply suggestions in

support of its motion (Doc. 10). The Court, after full and careful consideration of the issues

raised and legal arguments provided by the parties, hereby **GRANTS** Plaintiff's Motion to

Remand (Doc. 4) and **DENIES AS MOOT** Defendant's Partial Motion to Dismiss (Doc. 5).

## BACKGROUND

The facts giving rise to the present lawsuit surround the EF5 tornado that hit Joplin,

Missouri on May 22, 2011. On July 3, 2012, Plaintiff filed a petition in the Circuit Court of

Jasper County, Missouri, alleging Defendant insurance company wrongfully denied payment

under Plaintiff's homeowner's insurance policy. According to the petition, Plaintiff's home was

substantially damaged by the tornado and, after Plaintiff timely filed an insurance claim with

Defendant, Defendant performed "an inadequate, incomplete, and unreasonable investigation"

and "wrongfully denied Mr. Dominick's property claim by not providing full coverage under the

Policy for all his damages." Pl.'s Pet. 2. The petition seeks to state causes of action for: (I)

1



breach of contract, (II) vexatious refusal, (III) fraud, and (IV) punitive damages. Pl.'s Pet. 3-7. Plaintiff requests judgment in his favor for "actual damages, pre- and post-judgment interest as allowed by law, costs of suit, punitive damages, and all other relief, at law or in equity, to which Plaintiff may be entitled, in an amount not to exceed $75,000." Pl.'s Pet. 8.

On August 11, 2014, Defendant filed a notice of removal to litigate the case in federal court. Defendant seeks to remove the case on the basis of diversity of citizenship under 28 U.S.C. § 1332(a)(1) and (2). Def.'s Notice of Removal 2. Defendant's notice of removal describes the citizenship of each party and notes that "the plaintiff's allegations of requisite jurisdiction amount are not necessarily dispositive of the issue." Def.'s Notice of Removal 2-4. Rather, Defendant calculates the amount in controversy by adding Plaintiff's roof repair estimate ($35,077.69), Plaintiff's claimed property costs other than roof-repair,[1] possible statutory penalties under the vexatious refusal statute (20% of first $1,500 and 10% of remaining amount), possible attorney's fees recoverable under the vexatious refusal statute (estimate 25% contingency fee), and possible punitive damages, and concludes that "[t]he potential damages recoverable, . . . exceed the $75,000 threshold." Def.'s Notice of Removal 5-6.

On August 13, 2014, Plaintiff filed a motion to remand. In his motion, Plaintiff acknowledges diversity of citizenship but claims (1) Defendant did not file its notice of removal within thirty (30) days as required under 28 U.S.C. § 1446(b)(1), and (2) Defendant failed to meet its burden to show with a legal certainty that the amount in controversy exceeds $75,000. Pl.'s Mot. Remand 1-4. Plaintiff argues that Defendant "received" a copy of the petition on July

---

[1] "During the claims process, Plaintiff submitted a repair estimate totaling $36,077.69. See Exhibit C, Affidavit ¶4, and the attached exhibit. This figure should be reduced to $35,077.69 to account for the $1,000 deductible paid by the plaintiff. However, this $35,000 only applies to roof repairs. As stated above, Plaintiff is also seeking damages for: (a) water leakage caused by the roof damage, (b) damage to the outside pond and storage shed roof, (c) damages to the interior, (d) damages to bricks, (e) damages to gates, (f) damages to trees (including damages for tree removal), (g) damages to chimney caps, and (h) damages to contents. See Exhibit B, Petition, ¶ 14." Def.'s Notice of Removal ¶ 15.

2

3, 2014, when counsel for Plaintiff emailed a copy to Defendant. Pl.'s Mot. Remand 2. Because "August 11 is 39 days after July 3," Plaintiff claims "Defendant, therefore, failed to follow the proper procedures for remand." Pl.'s Mot. Remand 2. Furthermore, Plaintiff argues remand is proper because Defendant failed to show to a legal certainty that the amount in controversy exceeds $75,000 because Defendant "gave no estimate of the value or amount of that damage to those other [non-roof] parts of Plaintiff's house." Pl.'s Mot. Remand 4.

Defendant argues in response that its notice of removal was timely filed and that its calculation of Plaintiff's claims was sufficient to satisfy its burden to prove the jurisdictional threshold. Defendant claims that the receipt of a courtesy copy of the petition does not begin to run the thirty-day time limit to file a notice of removal; instead, "Courts have been clear that the 30-day time period in which to remove does not start to run until actual service of summons and complaint." Def.'s Sugg. Opp'n Remand 1. Assuming arguendo that initial service was proper on July 11, 2014, Defendant concludes that its notice of removal filed August 11, 2014 was within the thirty (30) day deadline.[2] Def.'s Sugg. Opp'n Remand 2. Defendant then restated its prior calculation of Plaintiff's claims and argues that this calculation satisfies the requirements of 28 U.S.C. § 1332(a) to a legal certainty. Def.'s Sugg. Opp'n Remand 4-7.

On August 18, 2014, Defendant filed its Partial Motion to Dismiss for failure to state a claim. Within its motion, Defendant asks the Court to dismiss Plaintiff's asserted claims for

---

[2] Defendant agues it was not properly served until August 25, 2014. Def.'s Sugg. Opp'n Remand 3. Defendant explained in its notice of removal:

> According to Missouri Case Net, Plaintiff attempted to serve Midwestern through the Missouri Department of Insurance on July 11, 2014. See Exhibit A, Missouri Case Net Docket Entry, Case No. 14AO-CC00188. However, as Plaintiff erroneously identified defendant as "The Midwest [sic] Indemnity Company" in his petition, it appears from Missouri Case Net that the Department of Insurance sent a Notice of Rejection of Service to Plaintiff on July 17, 2014. See Exhibit A. Based upon the information available to it, Midwestern does not believe that it was effectively served on July 11, 2014. However, the Cole County Sheriff filed the return of service on July 18, 2014, indicating that Defendant Midwestern had been served on July 11, 2014. See Exhibit A. Out of an abundance of caution, Midwestern is removing this action, as if it had been properly served on July 11, 2014, to comply with the thirty (30) day deadline. Def.'s Notice of Removal ¶ 2.

3

fraud (Count III) and punitive damages (Count IV). Defendant argues that tort actions based on insurance contracts are prohibited under Missouri law and, therefore, because Plaintiff's fraud claim is based on the insurance contract, it is inappropriate and should be dismissed. Def.'s Mot. Dismiss 1. Defendant argues that Plaintiff's claim for punitive damages should be dismissed because it arises only from Plaintiff's fraud claim. Def.'s Mot. Dismiss 2. Plaintiff counters that the fraud claim should not be dismissed because it is "not dependent on the elements of the contract claim" and it is therefore not preempted by Missouri law. Pl.'s Sugg. Opp'n Dismiss 5. Defendant concludes that "Plaintiff has simply re-characterized the [same set of underlying] facts to pursue a theory in tort," and because Plaintiff "failed to articulate a separate and district tort," dismissal is appropriate. Def.'s Sugg. Supp. Dismiss 1.

## ANALYSIS

"In every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments." *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006). Plaintiff's motion for remand challenges the Court's jurisdiction; therefore, the Court must address that issue first. *See Warner v. Chase Home Fin. LLC*, 530 F. App'x 614, 615 (8th Cir. 2013).

### A. Motion for Remand

An action may be removed from state court to federal district court if the case falls within the original jurisdiction of the district court. 28 U.S.C. § 1441(a). If the case is not within the original jurisdiction of the district court, the court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). A defendant seeking removal "bears the burden of establishing that the district court ha[s] original jurisdiction by a preponderance of the evidence." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011). "All doubts about federal

4

jurisdiction should be resolved in favor of remand to state court." *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010). The procedure for removal is contained in 28 U.S.C. § 1446.

## 1. Time for Removal

Section 1446 states that the notice of removal "shall be filed within 30 days after the receipt of the defendant, through service or otherwise, of a copy of the initial pleading[.]" 28 U.S.C. § 1446(b)(1). Plaintiff claims Defendant received a copy of the petition "through service or otherwise" when Plaintiff's counsel emailed a copy of the Petition to Defendant on July 3, 2014. Plaintiff's argument is contrary to clear Supreme Court, Eighth Circuit, and Western District of Missouri precedents. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *Marano Enterprises of Kansas v. Z-Teca Restaurants, L.P.*, 254 F.3d 753, 756 (8th Cir. 2001); *Oakdale Mall Associates v. Cincinnati Ins. Co.*, Case No. 11-0562-CV-W-FJG, 2011 WL 2729443 (W.D. Mo. July 13, 2011).

In *Murphy Bros.*, the Supreme Court held that a "courtesy copy" of the file-stamped complaint, which was faxed from plaintiff's counsel to defendant, was insufficient to trigger the thirty-day period under section 1446(b). *Id.* Although defendant received a copy of the complaint at that time, the Court explained that the "receipt . . . through service or otherwise" language within the section 1446 was added by legislators merely to increase uniformity among states and to ensure an adequate amount of time for persons to remove; [3] it was not intended to "dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant." *Id.* at 351-53. The Court further clarified that under the statute "the defendant's period for removal will be no less than 30 days from service [of summons], and in some categories, it will be more than 30 days from service [of

---

[3] For example, in those states where the service of a summons commences an action (even before a pleading is filed), it was possible for the period of removal to expire before the defendant obtained access to the complaint. *Id.*

5

summons], depending on when the complaint is received." *Id.* at 354. To hold otherwise would "effect so strange a change . . . in which one's procedural rights slip away before service of a summons, i.e., before one is subject to any court's authority." *Id.* at 356. The Court concluded that, because the faxed "courtesy-copy" of the complaint was not formal service of process, the defendant's time to remove was not triggered. *See id.*

A recent decision from the Western District of Missouri also rejected Plaintiff's argument. *Oakdale Mall Associates v. Cincinnati Ins. Co.*, 2011 WL 2729443 (W.D. Mo. July 13, 2011). In that case, the court struck down an argument that removal was untimely where defendant filed its notice of removal more than thirty days after it received a copy of the petition from plaintiff's counsel as an exhibit in another case. *Id.* Judge Gaitan held that "as the Supreme Court found twelve years ago, formal service of process is a necessary prerequisite to trigger the 30–day time period for removal." *Id.* The Judge further warned counsel that "any lawyer reading the Supreme Court's opinion in *Murphy Bros.* ought to have recognized that [certain cases] had been overruled" and that citation to overruled law "borders perilously close to sanctionable behavior under Rule 11." *Id.*

Under these precedents, the Court concludes Defendant's thirty-day period to remove under section 1446 commenced on the date Defendant was formally served with process, not on the date that Plaintiff emailed defense counsel a copy of the petition. Assuming *arguendo* that Defendant was effectively served on the date listed in the sheriff's initial return of service, Defendant received formal service of summons and complaint on July 11, 2014. Because Defendant filed its notice of removal on August 11, 2014, within the thirty-day period required under 28 U.S.C. § 1446(b)(1),[4] Defendant's removal was timely. The Court denies Plaintiff's

---

[4] The Court notes that August 11, 2014 is actually thirty-one days after July 11, 2014. However, as the federal rules of civil procedure indicate, "When the period is stated in days or a longer unit of time: (A) exclude the day of the

6

untimeliness argument as basis for remand. The Court also rejects Plaintiff's contention that "[u]nder clear case law, Plaintiff's Motion to Remand for Defendant's failure to observe the 30-day time limit should be granted," and refers Plaintiff's counsel to Judge Gaitan's warning in *Oakdale Mall Associates*.

## 2. Amount-in-Controversy

Section 1446 contains certain requirements for removing a case on the basis of diversity of citizenship under 28 U.S.C. § 1332(a). 28 U.S.C. § 1446(c). As to the amount-in-controversy requirement, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy[.]" *Id.* at § 1446(c)(2). While the damage amount stated by plaintiff is "usually determinative of the amount in dispute," "it is not necessarily dispositive." *Peng Vang v. Mid-Century Ins. Co.*, 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013). Furthermore, where the plaintiff attempts to avoid federal jurisdiction by pleading damages "not to exceed $75,000" but the plaintiff does not enter into a binding stipulation to that effect prior to the filing of the notice of removal, the plaintiff's demand is not necessarily conclusive. *See McGowan v. Hartford Fire Ins. Co.*, Case No. 4:11CV1669 HEA, 2012 WL 3038532 (E.D. Mo. July 25, 2012).

If the plaintiff does not demand a specific sum of damages or can recover damages in excess of the sum demanded, then the federal court may retain jurisdiction if the defendant proves "by the preponderance of the evidence, that the amount in controversy exceeds

---

event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period, but if the least day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(1); Local Rule 6.1. Here, the last day of the thirty-day period was a Sunday; thus, Defendant had until the next day, July 11, 2014, to file its notice of removal. *See Boulet v. Millers Mut. Ins. Ass'n of Ill.*, 36 F.R.D. 99, 100 (D. Minn. 1964) (citing *Union National Bank v. Lamb*, 337 U.S. 38 (1949)).

[\$75,000].", *See id.* at § 1446(c)(2). [5]  In determining whether the defendant has met this burden, "the question is not whether the damages will exceed the jurisdictional amount, but whether a fact finder might legally find that the damages exceed that amount." *Walz v. FedEx Office & Print Servs., Inc.*, Case No. 2:12-CV-04188-NKL, 2012 WL 5386058 (W.D. Mo. Nov. 2, 2012).

In computing the amount in controversy, the defendant may properly include punitive damages, although those claims are "given closer scrutiny" and "the trial judge [is] accorded greater discretion" in determining the amount. *Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994). In a Missouri vexatious refusal case, the removing party may also include statutory penalties and attorney's fees along with the plaintiff's breach of contract damages. *Peng Vang v. Mid-Century Ins. Co.*, 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013); *see also.Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005) ("*statutory* attorney fees count toward the jurisdictional minimum calculation" (emphasis added)). Eighth Circuit courts hold that, in calculating the amount in controversy, it is reasonable to estimate attorney's fees based upon a 25% contingency fee. *Peng Vang*, 2013 WL 626985 at \*2; *Young v. State Farm Fire & Cas. Co.*, No. 4:08CV1891MLM, 2010 WL 173832, at \*2 (E.D.Mo. Jan. 15, 2010).

"Once the removing party has established by a preponderance of the evidence that the jurisdictional minimum is satisfied, remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount." *Hargis v. Access Capital Funding, LLC*, 674 F.3d 783, 790 (8th Cir. 2012) (citing *Bell v. Hershey Co.*, 557 F.3d 953, 956

---

[5] Plaintiff states that "Defendant, for its part, misleads the Court by claiming it need only show by a 'preponderance of the evidence' the existence of the jurisdictional amount. . . . Missouri federal courts apply the 'legal certainty' test[.]" Pl.'s Mot. Remand 2. To support this contention, Plaintiff cites a 1998 case from the Eastern District of Missouri. *See Rodery v. Hardee's Food Sys., Inc.*, 995 F. Supp. 999, 1000 (E.D. Mo. 1998). Because the removal statute as amended in 2011 clearly states the "preponderance of the evidence" standard, and because Eighth Circuit case law since that time is clear on the issue, the Court again reminds Plaintiff's counsel of Judge Gaitan's warning in *Oakdale Mall Associates*. *See* text *supra* at 6.

8

(8th Cir. 2009)). The legal-certainty standard is not met if even a possibility exists of recovering more than the statutory minimum. *Basham v. Am. Nat. Cnty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 886 (W.D. Ark. 2013) (citing *Back Doctors Ltd. v. Metropolitan Property & Casualty Ins. Co.*, 637 F.3d 827, 831 (7th Cir.2011)).

Here, Defendant failed to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000. Defendant itemized actual damages of $35,077.69. Based on this figure, plus potential statutory penalties,[6] plus a reasonable estimate of attorney's fees, the total amount in controversy proven by Defendant is $48,419.75, which does not meet the jurisdictional threshold.[7] While the figure above does not include damages for the "other" non-roof repairs, Defendant failed to present any evidence that a "fact finder might legally find" such damages would render the amount in controversy greater than $75,000. Defendant presented no estimates of the non-roof repairs, nor did Defendant cite any case law based on analogous facts. *See Harris v. TransAmerica Life Ins. Co.*, Case No. 4:14-CV-186 CEJ, 2014 WL 1316245 at *1 (E.D. Mo. Apr. 2, 2014) (holding that "defendant must present some specific facts or evidence" to meet its burden and that such evidence "may include citations to similar cases"). According to the Court's calculation,[8] Defendant would need to show that a fact-finder could legally find these "other" repairs totaled nearly $20,000 in order to meet the jurisdictional threshold.[9] Here, Defendant presented no evidence to support this conclusion.

---

[6] The amount of the statutory penalty before attorney's fees is 20% of the first $1,500 of loss plus 10% of the remaining amount of loss in excess of $1,500. Mo. Rev. Stat. § 375.420.

[7] $35,078 + ($1,500 x .15) + ($33,578 x .10) = $38,735.80 + ($38,735.80 x .25) = $48,419.75

[8] $54,500 + ($1,500 x .15) + ($53,000 x .10) = $60,100 + ($60,100 x .25) = $75,125.00

[9] Compare to *Peng Vang v. Mid-Century Ins. Co.*, Case. No. 12-CV-01309-DGK, 2013 WL 626985 (W.D. Mo. Feb. 20, 2013) (holding jurisdictional amount satisfied where plaintiff's explicit monetary demand, prior to inclusion of attorneys' fees and loss for debris removal, equaled $63,400) and *Harris v. TransAmerica Life Ins. Co.*, Case No. 4:14-CV-186 CEJ, 2014 WL 1316245 at *1 (E.D. Mo. Apr. 2, 2014) (holding jurisdictional amount satisfied where

9

Moreover, the above figure does not include punitive damages. However, the Court finds no basis for punitive damages under Missouri law. As stated above, courts are to examine punitive damage claims with "closer scrutiny" than claims for actual damages. The "existence of the required amount [of punitive damages] must be supported by competent proof." *See Larkin v. Brown*, 41 F.3d 387, 389 (8th Cir. 1994). Where a plaintiff is unable to recover punitive damages on the facts alleged, punitive damages are not includable in the jurisdictional amount. *See id.*; *Allison v. Sec. Ben. Life Ins. Co.*, 980 F.2d 1213, 1216 (8th Cir. 1992). Furthermore, "the mere fact . . . that the Plaintiffs [assert] a claim for punitive damages, does not relieve . . . the removing party, from proving that, more likely than not, punitive damages will cause the amount in controversy to exceed $75,000." *Varboncoeur v. State Farm Fire & Cas. Co.*, 356 F. Supp. 2d 935, 949 (S.D. Iowa 2005).

Defendant failed to present any specific facts or evidence that a fact-finder could legally award punitive damages such that the amount-in-controversy exceeds $75,000. As the Eastern District of Missouri recently summarized:

> Under Missouri law, "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract. Damages for breach of contract are limited to the loss of the benefit itself." If the insurance company has refused to pay without reasonable cause or excuse, Mo.Rev.Stat. § 375.420 also permits a plaintiff to recover "consequential damages, such as attorneys' fees and interest associated with collection." However, a party complaining of breach of an insurance contract may not also bring a tort claim dependent upon the elements of the contract claim. In other words, the facts that form the basis for the tort claim must be independent from the facts underlying the contract and vexatious refusal to pay claims in order for the tort claim to survive a motion to dismiss.

*Ingrassia v. OneBeacon Ins. Grp.*, 4:14 CV 1216 CDP, 2014 WL 4639171 (E.D. Mo. Sept. 16, 2014) (internal citations omitted).

---

actual damages and statutory penalties totaled $63,950 prior to inclusion of attorneys' fees or alleged punitive damages.)

Here, Plaintiff's claim for punitive damages arises solely from his fraud claim. Plaintiff's fraud claim alleges that Defendant misrepresented the insurance policy because it "made a representation to Plaintiff that [Defendant] would provide insurance coverage in accordance with the Policy issued for Plaintiff's property located at [address] but have not provided insurance coverage in accordance with the Policy." Pl.'s Pet. ¶ 29. The facts underlying Plaintiff's fraud claim are clearly not "independent" from those underlying his breach of contract claim; rather, as Defendant points out, "Plaintiff has simply re-characterized the [same set of underlying] facts to pursue a theory in tort." Even Plaintiff admitted that "[t]he misrepresentation is that Defendant represented it would provide coverage in accordance with the Policy." This type of tort is clearly prohibited in insurance cases under Missouri law. *See Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284 (Mo. Ct. App. 2008). Accordingly, the Court cannot conclude that "a fact finder might *legally* find" punitive damages in this case, such that the amount in controversy exceeds $75,000.

In sum, Defendant failed to prove "by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." Defendant did not satisfy its burden by merely copying portions of the petition and reciting legal rules, thereby concluding the sum exceeds $75,000. Where, as here, the petition pleads an unspecified amount of damages, the removing party must present some specific facts or evidence demonstrating that the amount in controversy exceeds $75,000. Defendant's notice of removal and response to Plaintiff's motion for remand lack application including, for example, any estimate of non-roof repairs, any tangible calculation showing how damages exceed $75,000, or any reference to a factually analogous case that held the amount-in-controversy requirement was satisfied. Because Defendant failed to show the

11

amount in controversy exceeds $75,000, and because "all doubts about federal jurisdiction must be resolved in favor of remand" the Court grants Plaintiff's motion.

### B. Motion to Dismiss

The Court grants Plaintiff's motion to remand; therefore, the Court is without jurisdiction to reach the merits of Defendant's motion to dismiss. Defendant's motion is denied as moot.

### DECISION

Defendant failed to satisfy the requirements of 28 U.S.C. § 1446(c) by failing to show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Accordingly, Plaintiff's Motion to Remand (Doc. 4) is **GRANTED** and Defendant's Partial Motion to Dismiss (Doc. 5) is **DENIED AS MOOT**. The Court hereby orders that the case is remanded to the Circuit Court of Jasper County, Missouri.

**IT IS SO ORDERED.**

DATED:      October 2, 2014

                             */s/ Douglas Harpool*
                             DOUGLAS HARPOOL
                             UNITED STATES DISTRICT JUDGE

# JOHNSON, VORHEES & MARTUCCI
## ATTORNEYS AT LAW

ROGER JOHNSON
SCOTT VORHEES
PATRICK MARTUCCI
CEPHUS RICHARD, III
BRIAN JOHNSTON
JOSEPH WEIDHAAS
ERIN VORHEES

510 WEST 6TH STREET
JOPLIN, MISSOURI 64801

TELEPHONE: 417-206-0100
TOLL-FREE: 866-836-0100
FACSIMILE: 417-206-0110
www.4stateslaw.com

EMAIL: roger@4stateslaw.com
scott@4stateslaw.com
patrick@4stateslaw.com
cephus@4stateslaw.com
brian@4stateslaw.com
joe@4stateslaw.com
erin@4stateslaw.com
glenn@4stateslaw.com

GLENN R. GULICK, JR.
Of Counsel

October 10, 2014

The Hon. David C. Dally
Jasper County Courthouse
601 S Pearl
Joplin, MO 64801

RE:  Dominick vs. Midwestern Indemnity Co
**14AO-CC00188**

Dear Judge Dally:

Please set a scheduling conference hearing in this case so that a four day jury trial date can be selected. Thank you for your courtesies.

Very truly yours,

Joseph Weidhaas

JW/alb

cc:
Bruce A. Moothart
Peter Andreone
Seyferth, Blumenthal & Harris
4801 Main St, Ste 310
Kansas City, MO 64112
*Attorneys for Defense*

LICENSED IN:   MISSOURI   OKLAHOMA   KANSAS   ARKANSAS   CALIFORNIA   ILLINOIS